## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| **JOHN DOE,** | **:** | |
| | **:** | |
| | **:** | |
| **Plaintiff,** | **:** | **Civil Action No: _____** |
| | **:** | |
| | **:** | |
| **-against-** | **:** | |
| | **:** | |
| | **:** | |
| **YALE UNIVERSITY, YALE** | **:** | |
| **UNIVERSITY BOARD OF TRUSTEES,** | **:** | |
| **SHERILYN SCULLY in her individual and** | **:** | |
| **official capacity, ANJANI JAIN in his** | **:** | |
| **individual and official capacity, WENDY** | **:** | |
| **TSUNG in her individual and official capacity,** | **:** | |
| **and K. GEERT ROUWENHORST in his** | **:** | |
| **individual and official capacity,** | **:** | |
| | **:** | |
| **Defendants.** | **:** | |

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S *EX PARTE* MOTION TO <u>PROCEED UNDER PSEUDONYM</u>

**LAW OFFICES OF WILLIAM B. BILCHECK, JR.**
**Attorney for Plaintiff**
**12 Brookside Road**
**P.O. Box 281**
**Madison, CT 06443**
**(203) 245-6252**

**NESENOFF & MILTENBERG, LLP**
**Attorneys for Plaintiff**
**363 Seventh Avenue, Fifth Floor**
**New York, New York 10001**
**(212) 736-4500**

Plaintiff John Doe (hereinafter referred to as "Plaintiff" or "John Doe"), by his attorneys Nesenoff & Miltenberg, LLP and William B. Bilcheck Jr. Law Offices, hereby seeks authorization to file a Complaint in the above-captioned matter as a pseudonymous Plaintiff. In light of the serious nature of the allegations contained in the Complaint, Plaintiff is justifiably concerned about the potential irreparable harm that could further prevent Plaintiff from proceeding with his future endeavors. Plaintiff's identity as described in the Complaint should not be disclosed to the public due to the nature of the allegations in said Complaint. *See* Declaration of William B. Bilcheck, Jr., Esq. ("Bilcheck Decl.") attached to Plaintiff's *Ex Parte* Motion to Proceed Under Pseudonym.

Plaintiff is prepared to provide a statement of his true identity under seal, upon the Court's Request.

## STATEMENT OF FACTS

Plaintiff, a student in Yale School of Management's ("SOM") Executive Master of Business Administration Program ("EMBA") program, was wrongfully expelled as a result of an erroneous finding of an honor code violation. (Compl. ¶¶ 1, 88). Upon Plaintiff's admission to the University, Yale provided him with copies of its university policies, including the Rights and Responsibilities of Students, which contains the Yale SOM Honor Code (the "Code") and Procedures of the Honor Committee (the "Procedures"), collectively referred to hereinafter as the "Policies." (Compl. ¶ 21). When faced with an honor code violation, a student appears before the Honor Committee, where a sanction can be issued, and, in turn, the student can appeal the sanction to a Faculty Review Board ("FRB"), whose decision is final. (Compl. ¶¶ 21-38).

Plaintiff enrolled in a course titled State and Society, taught by Professor David Bach ("Professor Bach") as part of completion of the EMBA program. (Compl. ¶ 39). Professor Bach required a series of assignments for completion of the course, including two group case think piece

essays, "up to [one thousand] 1000 words plus exhibits [and] charts, diagrams and tables to support [the] arguments," which accounted for thirty-five percent (35%) of the overall course grade. (Compl. ¶¶ 40-41). Professor Bach assigned Plaintiff Doe to work in a group on the think piece essay assignments with two fellow EMBA students in Doe's learning team, Jane Roe[1] and James Coe[2]. (Compl. ¶ 42).

On the first think piece essay, the group did not perform up to their self-imposed high expectations and received a six (6) out of a possible ten (10) for the first think piece essay. (Compl. ¶ 43). Additionally, Roe alienated Doe in a variety of manners including refusing to acknowledge him, not informing him of happenings on the projects, and refuting every comment Doe made. (Compl. ¶ 43). Despite her alienation, Doe continued to treat Roe respectfully and cordially, and continued to work with her collaboratively on assignments. (Compl. ¶ 43). For the second group think piece essay, Roe took the lead, and, did not include Doe in the planning process with Coe, despite Coe's insistence. (Compl. ¶ 44).

When Doe became involved, he realized that Roe's draft would lead to a subsequent undesirable mark due to poor grammar and spelling mistakes, which Professor Bach heavily criticized in their first think piece essay. (Compl. ¶ 45). Doe sought proofreading assistance accordingly, a common practice amongst Yale SOM students, which Yale SOM administrators and professors are aware of. (Compl. ¶ 46). Roe rejected Doe's first proofreader proposal because the proposed fellow Yale SOM student, a lawyer, was heavily involved a trial. (Compl. ¶ 46). Subsequently, Doe sought the assistance of Yale graduate Jacob Poe[3], a friend who tutored Doe

---

[1] Plaintiff refers to Jane Roe pseudonymously.
[2] Plaintiff refers to James Coe pseudonymously.
[3] Plaintiff refers to Jacob Poe pseudonymously.

for the graduate school entrance exam, to proofread the think piece essay, to which Roe and Coe initially agreed. (Compl. ¶ 47).

As the project progressed, in a group message with Plaintiff Doe, Jane Roe, and James Coe, Doe expressed that he would finalize the paper the same day with his friend, Poe. (Compl. ¶ 47). He also expressed his willingness to discuss as a group to finalize the paper and that Poe raised concerns about grammar, which would lower their score if uncorrected. (Compl. ¶ 47). Roe replied that they should do what they need to in order to finalize it and to see what the Doe's friend said regarding the final paper. (Compl. ¶ 47). Doe and Coe participated in an online WebEx meeting with Poe. (Compl. ¶ 47). Poe scribed a few of the ideas brought forth by Coe in comment bubbles, specifically Coe's argument that sugar and nicotine are not the same, with specific phraseology, which Coe later used again in a subsequent email. (Compl. ¶ 47). In an attempt to persuade his teammate that the paper needed additional editing, Doe overly stated the scope of his friend's services and that he compensated his friend for his services, to which Roe expressed her discomfort and stated she would submit her own paper. (Compl. ¶ 47). However, Doe did not compensate his friend Poe for any proofreading services. (Compl. ¶ 47). After Roe stated she intended to submit her own separate assignment, Coe expressed his desire to submit the assignment. (Compl. ¶ 48).

In an effort to demonstrate total transparency and ethical decision making, Doe contacted Professor Bach prior to turning in the assignment, in order to ensure that he properly credited Poe's assistance, namely, proofreading for grammar and spelling only, in the submission. (Compl. ¶ 49). However, Professor Bach was unavailable, and therefore Plaintiff Doe contacted Professor Jack Voe[4] ("Professor Voe"), a former Yale SOM professor and current business school professor at another top ranked university, who advised him on how to properly cite the assistance received,

---

[4] Plaintiff refers to Jack Voe pseudonymously.

which Plaintiff Doe indeed placed on the think piece essay. (Compl. ¶ 49). In an abundance of caution, Doe carefully described the situation to his fellow EMBA class Honor Committee representative and Yale faculty member, Jason Moe[5], in his capacity and in accordance with his duties as Honor Committee representative, who advised to submit the paper because he did not recognize any alleged issue or wrongdoing. (Compl. ¶ 50). Doe and Coe submitted their think piece essay in May 2019, which properly cited the assistance received from the proofreader, per the advice detailed above. (Compl. ¶ 51). Roe submitted her own think piece, separate from Doe and Coe. (Compl. ¶ 52).

In order to explain why Roe submitted a think piece separate from her assigned group, Roe brought her concerns about the proofreader on Doe and Coe's think piece to the attention of the teaching assistant and Professor Bach for the class. (Compl. ¶ 53). After submission of the think piece, prior to grading, and completely unaware of Roe's wrongful allegations against him, Doe spoke with Professor Bach directly regarding the assistance received in proofreading the think piece. (Compl. ¶ 54). Doe informed Bach of the proofreading assistance he received and the guidance from Professor Voe and Honor Committee Member Moe, but Professor Bach questioned why Plaintiff Doe did not seek guidance from Yale resources. (Compl. ¶ 54). Doe replied that he was not aware such resources existed, however, as per the Poorvu Center for Teaching and Learning's Website, the Graduate Writing Lab does not provide proofreading services. *Graduate Writing Laboratory – Frequently Asked Questions*, YALE UNIVERSITY POORVU CENTER FOR TEACHING AND LEARNING, https://poorvucenter.yale.edu/writing/graduate/individual-writing-consultations/frequently-asked-questions (last visited October 18, 2019). (Compl. ¶ 54). Doe and

---

[5] Plaintiff refers to Jason Moe pseudonymously.

Coe later received a seven (7) out of a possible ten (10) points for a grade on their think piece essay. (Compl. ¶ 55).

On or around July 3, 2019, Professor Bach submitted the case and materials for Honor Committee review, approximately two months after submission of the think piece. (Compl. ¶ 56). Plaintiff Doe received vague email notification on or around July 11, 2019 from the Defendant Assistant Dean of EMBA Program, Wendy Tsung ("Dean Tsung"), that she needed to speak to Plaintiff Doe regarding an academic issue. (Compl. ¶ 57). In the subsequent phone call with Dean Tsung and Defendant Dean Sherilyn Scully ("Dean Scully"), Dean Scully made accusatory comments towards Doe, indicating that she already decided upon an erroneous conclusion regarding both Doe and Doe's alleged honor code situation and aggressively questioned why Doe spoke with Professor Bach regarding the paper. (Compl. ¶ 58). Doe expressed that he did so in an effort to demonstrate total transparency and ethical decision making and detailed that he spoke with Moe prior to submission of the assignment, which Dean Scully took no issue with. (Compl. ¶ 58).

Dean Scully informed Doe that the alleged violation would move forward to a full Honor Committee hearing, consisting of the following individuals: (i) Professor Rouwenhorst, Robert B. and Candice J. Haas Professor of Corporate Finance and Deputy Director of the International Center for Finance, as Chairman of the Honor Committee; (ii) Shyam Sunder ("Professor Sunder"), James L. Frank Professor of Accounting, Economics, and Finance; (iii) James Choi Professor of Finance; (iv) three Yale SOM non-EMBA students; (v) Yale SOM EMBA student Jason Moe; and (vi) ex officio members Deans Scully and Tsung. (Compl. ¶¶ 59-60).

Plaintiff Doe submitted a series of materials to the Honor Committee reviewing his case that included: (i) a statement, which detailed that the help received did not amount to more than

grammar and proofreading edits, (ii) the redline document of the assignment that he received from Poe, which plainly portrayed that every edit made by his friend was for proofreading and grammar, (iii) an email he sent to Professor Bach, prior to submission of the assignment, asking to talk to him, and (iv) and (v) two conversations with Roe and Coe regarding the assignment. (Compl. ¶ 61). Additionally, Professor Voe and Jacob Poe submitted letters to the Honor Committee about advice given regarding citation of the proofreading and proofreading help received. (Compl. ¶ 62). Throughout the entire Honor Committee review process, Doe was honest and transparent regarding the situation in order to demonstrate that he did not have anything to hide concerning the help received. (Compl. ¶ 63).

By way of comparison, Coe, the team member who worked on the paper with Doe and Roe, submitted an email to the Honor Committee that Coe received from Roe, where Roe stated that she also used her own proofreader, a "tech editor" with whom she worked. (Compl. ¶ 64). However, Yale failed to take any action against Roe upon receipt of this information, even after Coe brought this directly to the attention of Dean Scully, who similarly declined to take any action. (Compl. ¶ 64).

On or around September 6, 2019, the Honor Committee met to review the case, and, directly prior to entering the room to appear before the Honor Committee, Dean Scully informed Doe and Coe that due to a procedural issue, Moe would not be serving on the Honor Committee reviewing their alleged infraction and inquired whether they would proceed without an EMBA representative. (Compl. ¶¶ 65-66). Coe immediately responded yes, that he would like to proceed, to which Dean Scully turned her attention to Doe and informed him that if he did not proceed that very day, it would be another five weeks until another Honor Committee meeting could potentially occur. (Compl. ¶ 66). Under the forceful eyes of Dean Scully, with her words ringing in his head,

Doe felt immense, immediate pressure to move forward, or else face a committee biased against him for delaying the process. (Compl. ¶ 66).

The Honor Committee members attacked Plaintiff Doe with questions and refused to allow him access to see a document specifically questioned on. (Compl. ¶ 67). While the Honor Committee questioned Doe about Poe's proofreading assistance, Doe took out his laptop and forwarded documents to the Dean Scully, as he was instructed do so, who would subsequently forward them to the Honor Committee, during the meeting, in an effort to demonstrate full transparency. (Compl. ¶ 68).

Doe also brought an adviser, former Navy commander Jenna Loe[6], with him to the Honor Committee hearing, as permitted by the Policies, which state the adviser "may help the student in preparing for…and may accompany the student to the meeting" and "[d]uring the meeting…may quietly suggest questions or issues for the student to raise." (Compl. ¶ 69). Additionally, and most importantly, "the adviser ***does not participate directly*** in the meeting," per the Policies (emphasis added). (Compl. ¶ 69). In clear violation of and direct contradiction to the Policies, Professor Rouwenhorst, as chairman of the Honor Committee, erroneously permitted Honor Committee Professor Sunder to cross-examine Jenna Loe on her assistance of Doe. (Compl. ¶ 70).

Later that day, Doe met Defendants Professor Rouwenhorst, Dean Scully, and Dean Tsung in the conference room where they informed him that the Honor Committee erroneously found that he "engaged in improper collaboration" regarding the think piece assignment, and consequently suspended him for one calendar year. (Compl. ¶ 73). During the meeting, the aforementioned Defendants credited the basis of their decision on a WhatsApp message, clearly disregarding the vast majority of the evidence Doe submitted, as well as his live statement in the

---

[6] Plaintiff refers to Jenna Loe pseudonymously.

Honor Committee meeting). (Compl. ¶ 74). Coe received also received a suspension from Yale SOM and would be required to pay tuition while serving the suspension. (Compl. ¶ 75).

The day after the Honor Committee hearing, September 7, 2019, Moe, who served, and was subsequently removed, as the only EMBA honor committee representative, wrote a letter to express his dismay over the decision regarding Plaintiff Doe's case, where he detailed that Dean Scully asked him to leave the room so the Honor Committee could conduct a vote on whether or not to allow Moe to participate in further proceedings regarding the case and that the Honor Committee removed him because his opinion differed from the opinions of the others. (Compl. ¶¶ 76-78). The Honor Committee erroneously voted to remove Moe from any further proceedings of discussion, thus leaving the Honor Committee without it's required EMBA student representative, as required by the Policy. (Compl. ¶ 77).

Doe subsequently expressed his concerns regarding the committee to Dean Anjani Jain, Deputy Dean for Academic Programs and Professor in the Practice of Management, and Chairman of the FRB, and Dean Scully, in a phone call on September 11, 2019 and an email, dated September 13, 2019, prior to the submission of his appeal. (Compl. ¶ 80). Plaintiff Doe detailed (i) the undue amount of pressure upon placed upon him to move the Honor Committee review along, (ii) highlighted that the Honor Committee that reviewed his case only consisted of three faculty members and three students, (iii) that he felt as though the Honor Committee did not fairly assess and evaluate his statements during the meeting because it appeared that the Honor Committee decided upon a wrongful finding of responsibility, as well as the disproportionate sanction, prior to the hearing, (iv) that Dean Scully improperly removed the Policy mandated EMBA student from the Honor Committee, which unfairly left his section unrepresented during the committee review of his own case, (v) that the entire process impacted him immensely and shared that he suffered

9

from panic attacks caused by the undue stress this process placed upon him and that sought the help of a therapist, and (vi) for clarification regarding his options from that point forward, specifically, whether he should appeal to the FRB. (Compl. ¶¶ 79-80).

In the same email, Plaintiff Doe voiced his unease that Dean Scully, ex officio member of the Honor Committee that reviewed his case, had a close personal relationship Jane Roe, the student that Doe worked on the think piece with and who brought forth the allegations against Doe to Professor Bach's attention. (Compl. ¶ 81). Roe had stayed as an overnight guest in Dean Scully's home and Roe's fiancé shared Shabbat dinners with Dean Scully. (Compl. ¶ 81). In reply to Plaintiff Doe, Dean Jain refuted several of these points, however, nevertheless removed Dean Scully from the FRB, and advised Doe that his next step would be to proceed to FRB appeal. (Compl. ¶ 82). Doe appealed the sanction to the FRB, as permitted by the Policies, again submitting a detailed statement with materials to show ethical decision making and transparency throughout. (Compl. ¶ 86). On September 17, 2019, Dean Jain informed Doe that the FRB wrongly changed Doe's suspension of one year to a permanent expulsion, a complete separation, from Yale SOM's EMBA program, a sanction disproportionate with the alleged wrongdoing. (Compl. ¶¶ 87-88).

Considering these facts, Plaintiff should be permitted to protect his identity by filing the Complaint under a pseudonym. Plaintiff is prepared to address measures to protect the confidentiality of his identity should the Court require disclosure to the public at a later stage in the proceedings.

## ARGUMENT

Many federal courts have permitted parties to proceed anonymously when special circumstances arise. Generally, in determining whether to permit a party to proceed anonymously,

a court "must balance the need for anonymity against the general presumption that parties' identities are public information and the risk of unfairness to the opposing party." *Plaintiffs I Thru XXIII v. Advanced Textile Corp.,* 214 F. 3d 1058, 1068 (9th Cir. 2000). The Second Circuit articulated a non-exhaustive list of factors when conducting this balancing test: (1) whether the litigation involves matters that are highly sensitive and of a personal nature; (2) whether identification poses a risk of retaliatory physical or mental harm to the party seeking to proceed anonymously or even more critically, to innocent non-parties; (3) whether identification presents other harms and the likely severity of those harms, including whether the injury litigated against would be incurred as a result of the disclosure of the plaintiff's identity; (4) whether the plaintiff is particularly vulnerable to the possible harms of disclosure, especially in light of his age; (5) whether the suit challenges the actions of the government or that of private parties; (6) whether the defendant is prejudiced by allowing the plaintiff to press his claims anonymously, whether the nature of that prejudice, if any, differs at any particular stage of the litigation, and whether any prejudice can be mitigated by the district court; (7) whether the plaintiff's identity has thus far been kept confidential; (8) whether the public's interest in the litigation is furthered by requiring the plaintiff to disclose his identity; (9) whether, because of the purely legal nature of the issues presented or otherwise, there is an atypically weak public interest in knowing the litigants' identities; and (10) whether there are any alternative mechanisms for protecting the confidentiality of the plaintiff. *Plaintiff v. Cuomo*, No. 10-CV-1534 TJM/CFH, 2013 WL 1213174, at *5 (N.D.N.Y. Feb. 25, 2013). As outlined below, a balancing of the above-noted factors leads to the inevitable conclusion that Plaintiff be permitted to proceed anonymously in this litigation.

**A.  The litigation involves matters of a highly sensitive and personal nature.**

11

Plaintiff should be permitted to proceed under a pseudonym given the highly sensitive and personal nature of this litigation. Plaintiff does not merely contend that the revelation of his name would result in embarrassment or public humiliation. Rather, Plaintiff notes the highly sensitive nature and privacy issues that could be involved with being falsely linked to an honor code violation. In fact, numerous courts around the country have permitted plaintiffs with claims against colleges and universities to proceed anonymously. Although these cases support this proposition related to differing subject matter, anonymity is warranted here because this type of allegation could similarly derail a student's career and livelihood. *See e.g. John Plaintiff v. Columbia University and Trustees of Columbia University,* 2014 WL 6471520 (S.D.N.Y. 2014); *Plaintiff v. Univ. of the South*, 687 F. Supp. 2d 744 (E.D. Tenn. 2009); *Plaintiff v. Univ. of Massachusetts-Amherst*, 2015 WL 4306521 (D. Mass. 2015); *Plaintiff v. Univ. of S. Florida Bd. of Trustees*, 2015 WL 3453753 (M.D. Fla. 2015); *Plaintiff v. Salisbury Univ.,* 2015 WL 3478134 (D. Md. 2015); *Plaintiff v. Univ. of Montana*, 2012 WL 2416481 (D. Mont. 2012)("With respect to the individual students involved in the Student Conduct Code proceeding, as well as the witnesses and University Court members involved in that proceeding, the Court finds that the interests of those individuals in avoiding undue embarrassment, harassment, and disclosure of sensitive private information outweigh the public's need to know their names," *citing Plaintiffs I–XXIII v. Advanced Textile Corp.,* 214 F.3d 1058, 1068–69 (9th Cir.2000)). Similarly, Plaintiff here should be permitted to proceed anonymously due to the highly sensitive and personal nature associated with being falsely accused of an honor code violation.

**B. Disclosure of Plaintiff's identity would result in substantial and irreparable harm.**

In addition, Plaintiff should be permitted to proceed anonymously in this matter as the revelation of his identity would result in significant harm to Plaintiff, the exact type which he seeks

to remedy by the commencement of this lawsuit. Should Plaintiff be required to reveal his identity publicly, any ultimate success in this matter would be negated by the disclosure of his name. Specifically, even if he achieved his objective of removing the sanction of expulsion from his academic records and returning to Yale to complete the Yale SOM EMBA program, Plaintiff would be significantly hindered in his ability to pursue future career and educational endeavors, including completion of an MBA anywhere, any other graduate study, acquisition of and maintenance of professional licensure in the financial industry, and employment advancement opportunities, as any entity or employer would undoubtedly have access to the records related to the instant matter and discover that Plaintiff was wrongly accused of an honor code violation, which erroneously calls into question his ethical decision making. It is widely known that the likelihood of acceptance as a transfer student at an institution with a similar academic reputation is is already significantly reduced in light of the high number of applicants and stiff competition, but it is almost nil when a plaintiff must content with the social stigma associated with being found responsible and expelled for an ethical violation, regardless of whether the decision is ultimately overturned as a result of litigation.

Based on the foregoing, Plaintiff should be permitted to proceed anonymously, as requiring him to reveal his identity would result in significant harm to Plaintiff, including the exact damages he seeks to remedy in this matter: namely, physical, psychological, emotional and reputational damages, economic injuries and the loss of educational and career opportunities.

**C.  Defendants will not be prejudiced by allowing Plaintiff to proceed pseudonymously.**

Further, Plaintiff should be permitted to proceed anonymously as Defendants will not be prejudiced in any way by proceeding against an anonymous party. "Other than the need to make redactions and take measures not to disclose plaintiff's identity, defendants will not be hampered

or inconvenienced merely by Plaintiff's anonymity in court papers." *Plaintiff No. 2 v. Kolko*, 242 F.R.D. 193, 198 (E.D.N.Y. 2006). Significantly, Defendants are already aware of Plaintiff's true identity. Thus, there is no doubt that Defendants will have an unobstructed opportunity to conduct discovery, present their defenses and litigate this matter, regardless of whether Plaintiff identifies himself or proceeds anonymously. Accordingly, Plaintiff must be permitted to proceed anonymously in this action as revealing his name will cause significant prejudice to Plaintiff, while proceeding anonymously will not hinder Defendants in any way.

**D.  There is a weak public interest in knowing Plaintiff's identity.**

Plaintiff should also be permitted to proceed in this action anonymously because the public does not have a strong interest in knowing his identity. Considering the purely legal nature of the claims presented (i.e., Defendants breached their contract with Plaintiff due to failure to follow their Policies and Procedures), there is a weak public interest in learning Plaintiff's identity as an individual. The public's interest in this matter would not be furthered by disclosing Plaintiff's identity, as his challenges to Yale's biased and unfair process concern a larger association than the interest of an individual plaintiff; they affect the student population at Yale as a whole. *See Plaintiff No. 2 v. Kolko,* 242 F.R.D. 193, 195 (E.D.N.Y. 2006).

While in the past courts disfavored allowing plaintiffs to proceed anonymously except in extreme circumstances, the nature of the internet today is such that any plaintiff is readily identifiable, and his information accessible, via a simple online search. Therefore, courts must be willing to afford additional protective measures to avoid further damage to a plaintiff involved in a matter concerning such egregious and unfounded accusations as the present one. Here, if the Court required Plaintiff to reveal his name, even if Plaintiff emerged victorious on his claims against Defendants, the public's access to his identity would result in further damage to his future

educational and career endeavors, resulting in additional mental, emotional and psychological harm, the very harms which he seeks to remedy in this action.

Thus, there is simply nothing about the status of the Plaintiff that would heighten any public interest beyond the normal public interest in any judicial proceedings sufficient to outweigh Plaintiff's right to privacy. Furthermore, the public's knowledge will only be minimally restricted as it will still know what is alleged to have occurred that resulted in the Honor Committee review, and how the Defendants investigated and adjudicated those charges. Allowing Plaintiff to proceed anonymously will not significantly obstruct the public's interest in this matter. Accordingly, there is not a strong public interest in knowing Plaintiff's identity as an individual, as the issues presented to this Court concern a much greater population of potential plaintiffs.

**E. Additional considerations regarding non-parties to the action favor anonymity.**

The impact upon non-parties and difficulty in allowing involved non-parties to remain anonymous while Plaintiff's identity is revealed warrants the continued use of a pseudonym. The District Court of Massachusetts in *Doe v. Trustees of Dartmouth College* recognized the impact removing plaintiff's anonymity would have on plaintiff's accuser, a non-party to the litigation, whose identity would likewise be disclosed if plaintiff were publicly identified. *Doe v. Trustees of Dartmouth Coll.,* No. 18-CV-040-LM, 2018 WL 2048385, at *6 (D.N.H. May 2, 2018). In the present matter, there are numerous individuals that are referred to pseudonymously due to the facts that they are non-parties to the litigation and to ensure little to no impact upon them as a result of this action. These individuals include: (i) Jane Roe, fellow Yale SOM EMBA student, (ii) James Coe, fellow Yale SOM EMBA student erroneously accused of an honor code violation, (iii) Jason Moe, fellow Yale SOM EMBA student and EMBA representative on the Honor Committee, (iv) Jenna Loe, advisor to Doe during the Honor Committee meeting subjected to impermissible cross-

examination, (v) Jacob Poe, Doe's friend that proofread the think piece essay in question for grammar and spelling, and (iv) Jack Voe, a former Yale SOM Professor who currently is employed at a different high ranking academic institution. These individuals are referred to pseudonymously to ensure their identities remain protected during this action. Should Plaintiff Doe's identity be revealed, it would easily lead to discovery of the identities of the individuals noted above.

Similarly, it would be impractical, and time consuming, to require Plaintiff here to disclose his identity, while allowing the numerous involved individuals, including the student who accused him of this alleged honor code violation, to proceed under a pseudonym.

Based on the foregoing, in consideration of the balancing of relevant factors, the Court should allow Plaintiff to employ a pseudonym in this matter. The interests of Defendants and/or the public will not be harmed at this early stage of the case if Plaintiff's name is not revealed. Plaintiff and his attorneys are prepared to address measures to protect the confidentiality of his identity should the Court require disclosure to the public at a later stage in the proceedings.

## CONCLUSION

For these reasons and such other reasons as may appear just to the Court, Plaintiff requests that his Motion to Proceed Under Pseudonym be granted in its entirety.

**Dated: New York, NY**                 **Respectfully submitted,**
**October 21, 2019**                 *Attorneys for the Plaintiff*

**NESENOFF & MILTENBERG LLP**       **WILLIAM B. BILCHECK JR. LAW OFFICES**

By: */s/ Andrew T. Miltenberg*             By: */s/ William B. Bilcheck Jr.*
**Andrew T. Miltenberg, Esq.**            **William B. Bilcheck Jr., Esq.**
*(pro hac vice admission pending)*         **12 Brookside Road**
**Stuart Bernstein, Esq.**                 **Madison, Connecticut 06433**
*(pro hac vice admission pending)*         **(203) 245-6252**
**363 Seventh Avenue, Fifth Floor**      **madctatty@aol.com**
**New York, New York 10001**
**(212) 736-4500**
**amiltenberg@nmllplaw.com**

16

**sbernstein@nmllplaw.com**

**Regina M. Federico, Esq.**
***(pro hac vice admission pending)***
**101 Federal Street, Nineteenth Floor**
**Boston, Massachusetts 02110**
**(617) 209-2188**
**rfederico@nmllplaw.com**