UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

-----------------------------------------------------------------x
: 
JOHN DOE, : Case No. 3:19-CV-01663 (CSH)
:
Plaintiff, :
:
v. :
:
YALE UNIVERSITY *et al.*, :  :
Defendants. : February 22, 2021
-----------------------------------------------------------------x

## DECLARATION OF JOHN DOE

Pursuant 28 U.S.C. §1746, the undersigned, JOHN DOE, states the following:

1. I am the Plaintiff in the action herein.

2. I was a graduate student in Yale's EMBA program in the School of Management before I was expelled in 2019. During that time I was in the same study group as Jane Roe and James Coe.

3. In a prior assignment, our group earned a subpar grade. In response, I offered to engage the help of a Yale graduate from whom I occasionally received writing help and exam preparation tutoring (the "Consultant").

4. The type of input the Consultant provided was similar to the "expert advice" Yale's Poorvu Center for Teaching and Learning provides graduate students, which includes private consultations to help in the "planning, drafting and revising" of "any writing project" including "research projects" and "dissertations" (link:

https://poorvucenter.yale.edu/graduate-students/gwl-consultations-written-and-oral-communication).

5. According to its website, the Poorvu Center provides "help . . . at any stage of the writing process from an outline to the final draft" from "[w]riting consultants" who "can work with you on clarity and coherence, discuss the development of your argument, and offer strategies to strengthen your structure or express your voice" as well as help with "paragraph and sentence structure" and "grammar." (link: https://poorvucenter.yale.edu/graduate-students/gwl-consultations-written-and-oral-communication/writing-consultations/how-schedule-consultation).

6. Indeed, Prof. Bach, who initiated the honor code investigation, considered Yale's Poorvu center a resource for students to use. (See Ex. A, 140:20).

7. Moreover, the type of help the Consultant provided corresponds to the type of "proofreading" support I have received since high school in connection with certain learning disabilities I have, which I disclosed to Yale during the appeal process.

8. As part of an IEP in high school, my school's Study Center provided me with services including reviewing content with me and proofreading my essays, which encompassed a review of my original work at each stage of the writing process encompassing content, structure and synthesizing information into an organized, coherent essay as well as assisting with spelling and grammar errors.

9. Proofreading in this context went beyond checking for spelling, or gross grammar errors—computers can correct these errors.

10. Whereas James worked with me and the Consultant on the same written project that was subject of the honor code violation, Jane, decided to not be a part of the group's submission.

11. James turned in our paper in which we disclosed that we received help from the Consultant.

12. Jane turned in her own separate paper that incorporated much of the work the group did together. Regardless, with respect to James' and my paper, she reported our communications with the Consultant to Professor Bach's teaching assistant (the "TA").

13. The TA "reviewed both versions of the paper" and found Jane's paper to be "substantially similar" to the version James and I submitted. (See Decl., Ex. B).

14. The TA's email also disclosed that Jane wrongly alleged that I paid the Consultant; however, the Consultant neither asked for payment nor received payment for the limited and brief work he provided.

15. In addition, I disclosed to Defendants Dean Scully and Dean Tsung that Jane indicated in an email that she intended to use an outside "tech editor" who edited the version of the paper she submitted. See Ex. C.

16. However, as part of the Honor Committee adjudication process, Defendants provided me with a copy of Jane's submission. The paper Jane submitted did not make any disclosure of outside help. See Ex. D.

17. Both James and I were suspended and we both appealed. As a result of the appeal, on information and belief, James was granted a financial accommodation. On appeal, my sanction was elevated to a permanent expulsion.

18. Yale did not disclose to me their findings or any explanation that justifies this dramatic increase from a one-year suspension to the highest possible sanction.

19. Upon information and belief, Jane was not investigated, let alone sanctioned, for her use of undisclosed outside help.

I declare under the penalty of perjury that the foregoing is true and correct.

February 22, 2021

_____
JOHN DOE