UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| JOHN DOE<br><br>        Plaintiff,<br>v.<br><br>YALE UNIVERSITY, YALE UNIVERSITY BOARD OF TRUSTEES, SHERILYN SCULLY in her individual and official capacity, ANJANI JAIN in his individual and official capacity, WENDY TSUNG in her individual and official capacity, and K. GEERT ROUWENHORST in his individual and official capacity,<br><br>        Defendants. | Case No. 3:19-cv-1663 (CSH)<br><br>September 28, 2021 |

**RULING ON DEFENDANT'S MOTION TO QUASH SUBPOENA [Doc. 50]**

**HAIGHT, Senior District Judge:**

Plaintiff, who is identified by the pseudonym John Doe, began in 2018 as a student in the Executive Master of Business Administration Program ("the EMBA Program") presented by Defendant Yale University's School of Management ("SOM"). In September 2019, Yale University ("Yale") permanently expelled Plaintiff for violating the Yale SOM Honor Code (the "Honor Code").

Plaintiff asserts, in this action against Yale, individual deans, and a faculty member of the SOM, that his expulsion was unlawful and entitles him to damages. Plaintiff further alleges that the Court has "diversity, federal question, and supplemental jurisdiction pursuant to 28 U.S.C. § 1332, 28 U.S.C. § 1331, and 28 U.S.C. § 1367." Doc. 1, ¶ 12. Defendants deny all liability.

The litigation is in its early stages. In aid of discovery, Plaintiff has served a subpoena

1

upon Defendant Yale which inquires principally into the circumstances involving two EMBA students, one male and the other female, who worked together with Plaintiff in a course. *See* Doc. 50-1 at 2. Yale moves to quash that subpoena. *See* Doc. 50. Plaintiff asks that it be enforced. *See* Doc. 56. This Ruling resolves the motion.

# I

The pleadings and papers in this case show that Plaintiff John Doe began as an EMBA student in 2018, with an anticipated graduation date of Spring 2020. Doc. 1, ¶ 19. Plaintiff claims that, "[d]uring his time in the Yale EMBA program, [he] excelled academically and entrenched himself into the community." *Id.* ¶ 20. As part of the EMBA Program, Plaintiff enrolled in a course called "State and Society," taught by Professor David Bach ("Professor Bach") during the Spring 2019 semester. *Id.* ¶ 39. Professor Bach also served as the Deputy Dean of the EMBA Program and the Acting Chair of the Faculty Review Board ("FRB"). *Id.* ¶ 39. The FRB hears appeals from decisions of the SOM Honor Committee ("Honor Committee"), which has jurisdiction over all Honor Code violations, "including matters of academic dishonesty." *Id.* ¶ 23. Plaintiff's enrollment in Professor Bach's course began a disputed chain of events which ultimately resulted in Plaintiff's expulsion from Yale, as well as this lawsuit.

# II

As part of the "State and Society" course, Professor Bach assigned his students to complete "two group case think piece essays, which accounted for thirty-five percent (35%) of the overall course grade." *Id.* ¶ 40. As their title recites, these essays were the product of a group of EMBA students working together. As part of the EMBA Program, Plaintiff was

included in a program "learning team" of six students which also included a woman, "Jane Roe," and another man, "James Coe." *Id.* ¶ 42. Those names are also pseudonymous. "Professor Bach assigned Plaintiff Doe to work in a group on the think piece essay assignments with two fellow EMBA students in Doe's learning team, Roe and Coe." *Id*.

According to Plaintiff's Complaint, things did not go well for the Doe-Roe-Coe think piece essay group. Their first paper received a grade of six out of a possible ten. *Id.* ¶ 43. Professor Bach criticized its grammar. *Id.* ¶ 45. Doe alleges that Roe "alienated" him and "used every opportunity to refute comments made by Doe, even to the point of not acknowledging him in the same room." *Id.* ¶ 43. Doe also states that he asked Roe to refrain from discussing "uncomfortable, highly personal topics" in his presence. *Id.* Complicating this increasingly difficult relationship between Doe and Roe, the second group think piece essay assigned by Professor Bach was still due. For the second assignment, Roe submitted an essay on her own. *Id.* ¶ 52. Doe and Coe submitted a separate essay. *Id*. Roe told Coe in an email that she had used "her own proofreader" for her essay, "a 'tech editor' with whom she worked." *Id.* ¶ 64. In preparing his essay, Doe received "proofreading for grammar and spelling" from "a friend, Yale graduate Jacob Poe" (another pseudonym). *Id*. ¶¶ 47, 49.

Plaintiff's Complaint describes at length the circumstances under which these essays came to be written and the assistance given their student authors by outside individuals. I need not recount them to resolve Yale's motion to quash Plaintiff's subpoena ("Motion to Quash"). For present purposes, it is sufficient to state that two separate think piece essays were submitted to Professor Bach for the second assignment in May 2019: one by Doe/Coe and another by Roe. *Id.* ¶¶ 51-52. On July 3, 2019, Professor Bach referred the case and accompanying materials to

the SOM Honor Committee for review of possible violations of the Honor Code. *Id.* ¶ 56.

### III

There is no dispute that, following Professor Bach's referral of the case to the Honor Committee, it did not take action against Jane Roe. Plaintiff John Doe and fellow student James Coe were subjected to Honor Committee hearings. The Honor Committee found that Doe "'engaged in improper collaboration'" with an outsider in the second think piece assignment and suspended him for one calendar year. *Id.* ¶ 73. Coe also received a one-year suspension and was required to pay tuition while serving the suspension. *Id.* ¶ 75.

Both Doe and Coe appealed these rulings to the FRB. The FRB reduced Coe's suspension to six months, without imposing associated costs. *Id.* ¶ 90. Doe fared differently. The FRB changed Doe's one-year suspension to expulsion from Yale SOM's EMBA Program. *Id.* ¶ 88. Yale asserts that, in Doe's case, "the Faculty Review Board, based on additional information, concluded that the appropriate sanction was a permanent expulsion." Doc. 18 ¶¶ 87-89.

### IV

Doe thereupon filed this action against (1) Yale and the Yale University Board of Trustees (collectively, "the Yale Defendants"); (2) Sherilyn Scully ("Dean Scully"), Anjani Jain ("Dean Jain"), and Wendy Tsung ("Dean Tsung"), each of whom is a dean of the SOM; and (3) K. Geert Rouwenhorst ("Professor Rouwenhorst"), an SOM faculty member. The Court refers to Dean Scully, Dean Jain, Dean Tsung, and Professor Rouwenhorst collectively as the "Individual Defendants."

Plaintiff's Complaint alleges that, in a number of ways, his disciplinary proceedings and

expulsion violated existing Yale practices and procedures, and were unfair, prejudiced and invalid.  Plaintiff's Complaint [Doc. 1] asserts seven causes of action:

- First: Breach of Contract (against the Yale Defendants);

- Second: Tortious Interference with a Contract (against the Individual Defendants);

- Third: Selective Enforcement, in violation of Title IX of the Educational Amendments of 1972, 20 U.S.C. § 1681 *et seq*. ("Title IX") (against the Yale Defendants);

- Fourth: Negligent Supervision (against the Yale Defendants);

- Fifth: Negligent Infliction of Emotional Distress (against all Defendants);

- Sixth: Intentional Infliction of Emotional Distress (against all Defendants); and

- Seventh: Estoppel and Reliance (against the Yale Defendants).

Plaintiff asserts that there are two sources of subject matter jurisdiction in this federal Court.  The third cause of action alleges a violation by Yale of Title IX, a federal statute, and falls within the Court's original federal question jurisdiction under 28 U.S.C. § 1331.  Section 1367 confers supplemental jurisdiction upon Plaintiff's additional state or common law claims, which, in that section's phrasing, "are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy" for constitutional purposes.  28 U.S.C. § 1367(a).

Plaintiff also asserts that his state and common law claims fall within this Court's diversity of citizenship jurisdiction under 28 U.S.C. § 1332(a)(1), which confers jurisdiction on the district courts over all civil actions "where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs," and is between "citizens of different States."

This alternative basis for subject matter jurisdiction is not adequately alleged in the Complaint.  For jurisdictional purposes, diversity of citizenship must be complete: a plaintiff's

5

state of citizenship must be different from that of every defendant.  *See, e.g.*, *E.R. Squibb & Sons, Inc. v. Accident & Cas. Ins. Co.*, 160 F. 3d 925, 930 (2d Cir. 1998) ("It is axiomatic that, for diversity jurisdiction to be available, all of the adverse parties in a suit must be completely diverse with regard to citizenship.") (citation omitted).  However, the Complaint alleges that Plaintiff is "a resident of the State of New York," Doc. 1, ¶ 7, and the Individual Defendants are "residents of the State of Connecticut."  *Id.* ¶ 15.

With distressing frequency, attorneys plead a difference in *residence* as if it established a difference in *citizenship*, notwithstanding the repeated admonition of the Second Circuit that "[a]n individual's citizenship, within the meaning of the diversity statute, is determined by his domicile."  *Palazzo v. Corio*, 232 F.3d 38, 42 (2d Cir. 2000) (citations omitted).  "[I]t has long been held that a statement of residence, unlike domicile, tells the court only where the parties are living and not of which state they are citizens."  *John Birch Society v. National Broadcasting Co.*, 377 F.2d 194, 199 (2d Cir. 1967) (citations omitted); *see also Canedy v. Liberty Mut. Ins. Co.*, 126 F.3d 100, 103 (2d Cir. 1997) ("Although it is well-established that allegations of residency alone cannot establish citizenship, plaintiff's complaint merely alleges that she is a 'resident' of Virginia. . . . Here, after oral argument, we asked the parties to submit additional affidavits regarding the plaintiff's domicile and the defendant's state of incorporation." (citations omitted)).

It follows from these cases that, with respect to Plaintiff's claims against the Individual Defendants, the Complaint's allegations of *residence* do not sufficiently plead diversity of *citizenship*.  Moreover, if any one of the Individual Defendants is a citizen of the same state as the Plaintiff, diversity jurisdiction cannot be sustained.

Comparable problems may arise with respect to Plaintiff's claims against another named Defendant: the Yale University Board of Trustees, which is "the governing body of Yale University" and "is composed of seventeen (17) regular members."  Doc. 1, ¶ 10.  Assuming without deciding that, for diversity purposes, a board of trustees is regarded in the same way as a limited liability corporation, where the corporation is deemed a citizen of the state of every equity-owning member, the Yale Board of Trustees would be a citizen of the state of citizenship of each individual trustee.

The diversity question, which I am required to consider *sua sponte*, is jurisdictional.  If the Court's subject matter jurisdiction in this case depended upon a showing of complete diversity between the parties, I would direct the filing of additional affidavits, the procedure employed by the Second Circuit.  *See, e.g.*, *Canedy*, 126 F.3d at 103.  However, I need not pursue that effort at present because the third cause of action in Plaintiff's Complaint adequately pleads a federal question claim against the Yale Defendants within 28 U.S.C. § 1331's original jurisdiction, and Section 1367 establishes supplemental jurisdiction over Plaintiff's other claims.

Plaintiff asserts a claim against the Yale Defendants for selective enforcement in violation of Title IX.  His theory is that he "sustained discrimination because of his sex," in that the Yale Defendants "treated Jane Roe more favorably than Plaintiff Doe at every turn."  Doc 1, ¶¶ 144-45.  Specifically, the Yale Defendants disregarded evidence that "Roe herself received assistance editing the paper from an outsource."  *Id.* ¶ 145.  They further "chose to bring forth the case of the alleged incident concerning Doe's proofreading because of their bias against Doe due to his gender," despite their awareness of Roe's "allegedly more severe honor code violation."  *Id.* ¶¶ 145-46.  Therefore, Plaintiff alleges that, "based solely on his gender, [he]

7

suffered selective enforcement of the disciplinary process which has limited his ability to participate in and benefit from Yale's educational program" and caused him severe distress. *Id.* at ¶ 147.

Plaintiff's Title IX claim is modeled on the Second Circuit's analysis of the statute in *Yusuf v. Vassar College*, 35 F.3d 709, 715 (2d Cir. 1984):

> Plaintiffs attacking a university disciplinary proceeding on grounds of gender bias can be expected to fall generally within two categories. In the first category, the claim is that the plaintiff was innocent and wrongly found to have committed an offense. In the second category, the plaintiff alleges selective enforcement. Such a claim asserts that, regardless of the student's guilt or innocence, the severity of the penalty and/or the decision to initiate the proceeding was affected by the student's gender.

Plaintiff Doe, having suffered Yale's maximum punishment of permanent expulsion, claims to be the victim of selective enforcement affected by his male gender, the designated comparator being his female co-SOM student, Jane Roe. This federal statutory claim is the proper vehicle for the Court's extension of supplemental jurisdiction over Plaintiff's additional claims alleged as separate causes of action in the Complaint.

**V**

Plaintiff must prove his claims. Following the usual course of civil litigation, Plaintiff has served a discovery demand on Yale in the form of a subpoena requesting the production of documents. Yale wishes to avoid that discovery. Its present motion seeks to quash the subpoena. *See* Doc. 50.

Federal civil litigation is characterized by broad pretrial discovery. Federal Rule of Civil Procedure 26(b)(1) provides: "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense. . . . Information within this scope of discovery

need not be admissible in evidence to be discoverable." To be *discoverable* under this Rule, information need only be *relevant* to a claim or defense. Relevance in federal civil practice is defined by Federal Rule of Evidence 401: "Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Rule 401 does not set a high bar for characterizing evidence as *relevant*. "[A]ny tendency" to make "more or less probable" a fact which is of some "consequence in determining the action" is language of inclusion, not exclusion. Rule 401 governs what is relevant and therefore discoverable under Rule 26(b)(1). The Supreme Court made this point forcefully in *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340 (1978), where after quoting Rule 26(b)(1) the Court said:

> The key phrase in this definition – "relevant to the subject matter involved in the pending action" – has been construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case.

437 U.S. at 351 (citation omitted).

In the case at bar, Plaintiff Doe invokes these rules of practice in serving Yale with a subpoena [Doc. 50-1] for the production of documents.

**VI**

The subpoena requests production of five categories of documents, all of which were generated by or relate to Honor Code investigations into the conduct of Jane Roe and James Coe in preparing the second group think piece essay assigned by Professor Bach.

Specifically, Request No. 1 seeks a complete and fully unredacted copy of a specific email dated September 17, 2019 and sent by Dean Jain to Dean Tsung, Dean Scully and

Professor Bach with CC to Professor Rouwenhurst (the "Jain Email"). Doc. 50-1 at 2. Request No. 2 seeks complete and fully unredacted copies of any emails transmitted as replies to, or forwards of, the Jain Email. *Id.* The Jain Email refers to "the FRB's decisions" on "each of the two appeals we discussed today," and recites "the main elements of the FRB decision" in one of the appeals, but all details are redacted. *Id.* at 3. It appears from the record and submissions of counsel that the material redacted from Plaintiff describes the FRB's reasons for its decision on Coe's FRB appeal concerning the second group think piece essay assigned by Professor Bach.

Request No. 3 seeks:

> Fully unredacted copies of all documents in connection with any complaint, investigation and hearing in which Jane Roe was accused of a violation of the SOM honor code including but not limited to the allegation that she received assistance from an outside source editing her second Think Piece without acknowledging the outside source.

*Id.* at 2. Similarly, Request No. 4 seeks:

> With regard to James Coe, fully unredacted copies of all documents, draft version, statements, notices, communications and exhibits in connection with his Honor Code complaint, the Honor Code investigation, the Honor Code committee Hearing, all appeals and all deliberations of the FRB and all sanctions including but not limited to all documents James Coe submitted.

Request No. 5 requests seeks communications between Jane Roe and another student in connection with the second think piece assignment, using specified search terms. Yale objects only to the timing of this request and undertakes to "perform the search, review the resulting communications, and produce responsive, non-privileged documents in a timely manner." Doc. 50-3 at 5. Accordingly, Yale's substantive objections in its Motion to Quash are made to Request Nos. 1 through 4 of the subpoena.

## VII

The purpose of Yale's Motion to Quash is to preclude Plaintiff from discovering details or circumstances with respect to investigations into or hearings about Honor Code violations by Jane Roe and James Coe in connection with the second group think piece essay assigned by Professor Bach.

In relevant part, Yale asserts two bases for that preclusion.[1] First, Yale argues that the information Plaintiff seeks about other, non-party students is (1) irrelevant and (2) highly sensitive and confidential. These contentions are summarized in Yale's brief:

> Substantively, the subpoena should be quashed because the requested information concerns confidential educational information related to other students who are not parties to this action. The requested information is protected from disclosure by the Family Education Rights and Privacy Act ("FERPA") and is irrelevant to the plaintiff's claims in this case.

*Id.* at 2. Moreover, Yale argues:

> The documents sought in Request Nos. 1 through 4 seek documents concerning alleged violations of the Honor Code by two other students and the Honor Committee proceedings addressing those violations. Neither student participated in the plaintiff's proceedings before the Honor Committee. The claims in this case concern the plaintiff's proceeding before the Honor Committee, and information regarding other students' proceedings before the Honor Committee is irrelevant.

*Id.* at 5. There is no substance to either of these contentions. For the following reasons, Yale's Motion to Quash will be denied.

---

[1] Yale also claims that "the subpoena was served in the early afternoon on Tuesday, March 2, 2021, and [Plaintiff] requested compliance by 10:00 a.m. on Friday, March 5, 2021." Doc. 50-3 at 2. Accordingly, Yale argues the subpoena should be quashed because the Plaintiff failed to allow a reasonable time for compliance. *Id.* (citing Federal Rule of Civil Procedure 45(d)(3)(A)(i)). Given the Court's order *infra* directing compliance with the subpoena on or before October 29, 2021, the Court does not consider this argument in detail.

## VIII

Seeking to avoid Plaintiff's subpoena, Yale stresses that Jane Roe and James Coe are not parties to the underlying action. *Id.* at 2, 3. That is true enough, but it has nothing to do with whether these documents relating to Roe and Coe are discoverable by Doe under the applicable rules of practice. On the contrary, one would hardly expect Jane Roe to be a co-plaintiff in the Title IX lawsuit filed against Yale by Doe, who identifies Roe as the favorably treated comparator in the alleged selective disciplinary enforcement which victimized Doe. Nor could Roe be regarded as a co-defendant in that action since enforcement decisions rested solely with Yale. Comparable considerations exist with respect to Coe, whose less severe discipline is held out by Doe as evidence that Yale's expulsion of Doe was excessive.

## IX

Yale's alternative contention is that the Family Educational Rights and Privacy Act of 1974 ("FERPA") precludes disclosure of the education records of Roe and Coe as SOM students. FERPA does not have that effect.

FERPA prohibits "the release of education records" or "personally identifiable information contained therein other than directory information" concerning "students" without permission. 20 U.S.C. § 1232g(b)(1). However, FERPA allows the disclosure of students' educational records if "such information is furnished in compliance with judicial order, or pursuant to any lawfully issued subpoena, upon condition that parents and the students are notified of all such orders or subpoenas in advance of the compliance therewith by the educational institution." *Id.* § (b)(2)(B); *see also* 34 C.F.R. § 99.31(a)(9)(i) (allowing disclosure "to comply with a judicial order or lawfully issued subpoena"). Given those provisions, "courts

have found that FERPA does not prevent the disclosure of students' educational records in connection with discovery in a case." *Metcalf v. Yale Univ.*, No. 15-CV-1696 (VAB), 2017 WL 627423, at *4 (D. Conn. Feb. 15, 2017) (citation omitted).

FERPA addressed certain perceived societal and policy needs, but the statute was not intended to abrogate the rules of discovery in civil litigation, nor does it have that preclusive effect. That is the holding in *Rios v. Read*, 73 F.R.D. 589 (E.D.N.Y. 1977), a thoughtful opinion by Chief Judge Mishler, which I will quote at some length:

> It is obvious, however, that [FERPA] does not provide a privilege against disclosure of student records. . . . [A]lthough [FERPA] does not by its terms limit discovery of school records under the Federal Rules of Civil Procedure, the Congressional policy expressed in this provision places a significantly heavier burden on a party seeking access to student records to justify disclosure than exists with respect to discovery of other kinds of information, such as business records. . . . These privacy violations are no less objectionable simply because release of the records is obtained pursuant to judicial approval unless, before approval is given, the party seeking disclosure is required to demonstrate a genuine need for the information that outweighs the privacy interest of the students.

*Id.* at 598-99 (citations omitted).

*Rios* held that the plaintiffs in a class action against school officials for violating plaintiffs' rights to equal educational opportunity made such a showing of necessity. The district court reasoned that in view of the issues presented, "the need for records of individual student progress is particularly acute." *Id.* at 599. Specifically, "[i]f the educational treatment of Hispanic children in Patchogue-Medford violates Title VI standards, it nonetheless would be impossible to prove unless the plaintiffs could trace the progress of the individual students." *Id.* The court compelled the defendant to answer plaintiffs' interrogatories. *Id.* at 602.

In *Ragusa v. Malverne Union Free School District*, 549 F. Supp. 2d 288 (E.D.N.Y. 2008), an action by a teacher against a school district, board of education, and superintendent for discrimination, the magistrate judge cited *Rios* as authority granting the teacher's motion to compel the school district to produce certain students' records, and held:

> I find that an order requiring disclosure of the requested education records is appropriate here because the information Plaintiff seeks is arguably relevant to her claims and is in the exclusive control of Defendants. . . . While the Court is mindful of the privacy interest of the students involved, such interest is outweighed by Plaintiff's need to obtain the information contained in those records.

*Id.* at 294.

In the case at bar, Plaintiff's need for the requested information about fellow students Roe and Coe is manifest. Plaintiff's Title IX claim of gender discrimination requires that he obtain and submit evidence of Yale's treatment of Roe, his female comparator. Doe's other claims of breach of contract, wrongdoing and excessive punishment all require proof and consideration of the relative parts played by Roe and Coe. Professor Bach's assignment of the second group think piece essay to Doe, Roe and Coe, and those students' performance of that assignment, form the nexus of all the claims Plaintiff asserts against all Defendants. Just as the court observed in *Rios* in comparable circumstances, Doe would find it "impossible to prove" his claims unless he could discover and demonstrate the relevant conduct of Roe and Coe, and how Yale evaluated that conduct for disciplinary purposes. FERPA does not operate to preclude Doe from seeking that information by subpoena.

## X

In essence, Yale's position is that Doe, having been expelled and questioning the validity of that punishment, is unable to obtain from Yale information which explains his expulsion.

This is because, Yale contends, proceedings before the Honor Committee and the FRB are confidential, and those bodies do not have to give reasons for their decisions.

That is not an attractive posture to strike, particularly for Yale, which might reflect that turning off the Lux obscures the Veritas. I am unable to accept that philosophy in this case, where Doe complains about the personal damage and distress inherent in his expulsion for violating an honor code. Plaintiff says his expulsion was wrongful. He is entitled to the lawful discovery of facts that may support his claim. Yale will be required to comply with Plaintiff's subpoena as best it can, within a reasonable time.

The Court recognizes the privacy and confidentiality concerns expressed by Yale in opposing this subpoena. However, those concerns were squarely addressed in a rather elaborate Stipulation and Protective Order [Doc. 42], which the parties filed on September 25, 2020 and the Court approved and adopted by electronic order on September 26, 2020 [Dkt. 43]. The protective order safeguards the privacy of involved individuals, thereby enhancing the relative importance of the Plaintiff's access to this information.

The Court neither expresses nor intimates a view as to whether Plaintiff's claims against Defendants are well founded. That determination is for another day, after a full exploration of the relevant facts. This Ruling is limited to Defendant Yale's motion to quash the subpoena Plaintiff served upon that Defendant.

## CONCLUSION

For the foregoing reasons, the Court makes this Order:

1. The motion [Doc. 50] of Defendant Yale to quash the subpoena [Doc. 50-1] served upon it by Plaintiff is DENIED.

2.     Defendant Yale is directed to comply with the subpoena in all respects on or before **October 29, 2021**.

It is SO ORDERED.

Dated:   New Haven, Connecticut
         September 28, 2021

*/s/ Charles S. Haight, Jr.*
CHARLES S. HAIGHT, JR.
Senior United States District Judge
