UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

---------------------------------------------------------------x
:
JOHN DOE, : Case No. 3:19-CV-01663 (CSH)
:
      Plaintiff, :
:
      v. :
:
YALE UNIVERSITY *et al.,* :
:
      Defendants. : June 3, 2022
---------------------------------------------------------------x

## MEMORANDUM OF LAW IN SUPPORT OF
## PLAINTIFF'S MOTION FOR PROTECTIVE ORDER

Plaintiff John Doe ("Plaintiff" or "Doe"), submits this memorandum of law in support of his Motion (the "Motion") pursuant to Fed. R. Civ. P. 26(c) for a Protective Order to prevent defendants Yale University, Yale University Board of Trustees, Sherilyn Scully, Anjani Jain, Wendy Tsung and K. Geert Rouwenhourst (all such defendants, collectively, "Defendants" or "Yale") from taking the depositions of Plaintiff's former employers.

As explained below in greater detail, in accordance with Fed. R. Civ. P. 26(c)(1), Plaintiff's counsel, undersigned, conferred telephonically with Defendants' counsel in good faith in an effort to resolve the dispute. *See infra*, p. 7.

### I.    INTRODUCTION

There is good cause for the Court to grant the Motion and enter a protective order prohibiting Defendants from taking depositions of Plaintiff's prior employers, including two major financial services companies (the "Former Employers").[1] Depositions of Plaintiff's Former Employers will only serve to inflict unnecessary injury on Plaintiff, including further

---

[1] Plaintiff is not specifically naming the Former Employers in this memorandum of law as doing so might compromise the confidentiality of his identity.

{00274547.2 }

irreparable damage to his career as a registered broker and financial advisor. The Former Employers were not involved in any way in the events that underlie Plaintiff's claims in this case, except that Plaintiff was employed with one of those employers when the events took place. Plaintiff already suffered serious damage to his career (i.e. the loss of his job) when someone with knowledge of the purportedly "confidential" Yale honor board proceedings at issue in this case sent an anonymous letter to Plaintiff's supervisor at his employer. *See* Exhibit "A." On the other hand, Defendants have little to gain from taking the depositions. Defendants' stated purpose for the depositions is to obtain information they hope to use on the issue of damages. However, Plaintiff has already provided Defendants, in the course of discovery, with sufficient documentary information concerning his employment with the Former Employers. But Defendants now seek to go on a discovery fishing expedition with little regard for consequences to Plaintiff, and in that regard, Defendants' insistence on the depositions is punitive and vindictive. Taken on the balance, Defendants' need for the depositions is *deminimis* in comparison to the potential harm to Plaintiff. Accordingly, The Motion should be granted.

## II.    BACKGROUND

Plaintiff commenced this action in October 2019 in order to recover damages and other remedies following Yale's expulsion of Plaintiff in 2019 from its Executive MBA Program for an ostensible honor code violation. Plaintiff alleges that Yale's investigation and adjudication of the honor code proceeding was seriously flawed, to Plaintiff's detriment. The Defendants answered Plaintiff's complaint in December 2019 and the parties thereafter proceeded with discovery. In the course of discovery, each side has have served requests for production of documents on the other, and each side has produced documents to the other. In addition, each side has taken depositions, including Defendants' deposition of Plaintiff, though each side still has a number of depositions to take. All discovery is scheduled to be finished by July 31, 2022. *See*

Memorandum of Discovery Conference and Order filed December 22, 2021 (ECF 68).

In the course of discovery, Defendants sought information pertaining to Plaintiff's Former Employers. According to Defendants' counsel, Defendants believe such information is relevant to Plaintiff's damages. While Plaintiff did not (and does not) agree that information sought by Defendants pertaining to Plaintiff's Former Employers is either relevant or reasonably likely to lead to the discovery of admissible evidence, Plaintiff compiled and produced documents to Defendants concerning his previous employment with the Former Employers. Specifically, Plaintiff has already produced documents, including, but not limited to: (i) performance evaluations, related to the Former Employer that he was employed with in 2019; (ii) his Uniform Application for Securities Industry Registration or Application (Form U4); (iii) his Unform Termination Notice for Securities Industry Registration (Form U5) pertaining to his separation from one of the Former Employers; (iv) his Form U5 pertaining to his separation from the other Former Employer; and (v) his personal tax returns for 2018, 2019, 2020 and 2021. Defendants' counsel has advised Plaintiff's counsel that Defendants wish to now take depositions of representatives of both Former Employers. As with their document demands, Defendants' counsel asserts that both Former Employers may have information bearing on Plaintiff's damages in this action.

### III.  ARGUMENT

#### A.  Standard For Granting Protective Order Under Fed. R. Civ. P. Rule 26(c).

Plaintiff seeks entry on an Order pursuant to Fed. R. Civ. P. Rule 26(c) prohibiting Defendants from deposing the Former Employers. Rule 26(c) authorizes the Court to issue orders, "for good cause shown, to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expenses . . ." Fed. R. Civ. P. 26(c)(1). It is well settled that the party seeking a protective order bears the burden of proving that good cause exists and that the

issuance of a protective order is necessary to protect a party or person. *Gambale v. Deutsche Bank AG*, 377 F.3d 133, 142 (2d Cir. 2004); *Dove v. Atl. Capital Corp.*, 963 F.2d 15, 19 (2d Cir. 1992). For purposes of a protective order, "good cause" is established when a party is able to show that a "clearly defined, specific and serious injury" will occur in the absence of such an order. *In re Terrorist Attacks on Sept. 11, 2001*, 454 F. Supp. 2d 220, 222 (S.D.N.Y. 2006) (quoting *Shingara v. Skiles,* 420 F.3d 301, 306 (3d Cir. 2005)). While the burden to show good cause remains on the moving party, the Court cannot simply disregard the impact of such an order on the party seeking to obtain discovery, but rather must balance the interests of all parties in coming to its decision. *Mitchell v. Fishbein*, 227 F.R.D. 239, 245 (S.D.N.Y. 2005) ("the appropriateness of protective relief from discovery depends upon a balancing of the litigation needs of the discovering party and any countervailing protectable interests of the party from whom discovery is sought") (quoting *Apex Oil Co. v. DiMauro*, 110 F.R.D. 490, 496 (S.D.N.Y. 1985)); *Solarex Corp. v. Arco Solar, Inc.,* 121 F.R.D. 163, 169 (E.D.N.Y. 1988) ("[u]nder [Rule 26(c)], a court is required to compare the potential hardship to the party against whom discovery is sought, if discovery is granted, with that to the party seeking discovery if it is denied"). Ultimately, the decision to grant or deny a protective order lies within the sole discretion of the Court. *Dove*, 963 F.2d at 19 ("[t]he grant and nature of protection is singularly within the discretion of the district court . . . ."); *Galella v. Onassis*, 487 F.2d 986, 997 (2d Cir. 1973).

      **B.**      **There Is Good Cause To Issue A Protective Order Preventing Defendant From Deposing The Former Employers.**

Neither of the Former Employers were involved in any way in the Yale honor code proceedings that led to this litigation and neither company would have any information germane to the substantive issues in the case. Defendants' only legitimate basis to depose either of the companies is their speculation and hope that the companies might provide evidence helpful to

Defendants' effort to mitigate Plaintiff's damages claim. Plaintiff's damages include the damages to his professional career in the financial industry resulting from having been wrongfully expelled from Yale based on an ostensible honor code violation. Defendants hope to uncover evidence (derived from the Former Employers) demonstrating that Plaintiff's career trajectory would be limited due to other possible instances of alleged dishonest conduct in connection with his employment. To be clear, Defendants have to date uncovered no such evidence, but are essentially looking to undertake a fishing expedition to see what information might possibly surface. But by deposing the Former Employers, Defendants are putting Plaintiff's career, which has already been severely damaged as a consequence of the Yale honor code proceeding, in further jeopardy.

The Court should be aware that Plaintiff was employed with one of the Former Employers in October of 2019, and following the final ruling in the Yale honor code proceeding that resulted in Plaintiff's expulsion from the Yale Executive MBA program, an individual who's identity is unknown to Plaintiff but obviously familiar with the Yale honor code proceeding against Plaitniff (likely either a Yale employee or another Yale student) sent an anonymous letter directly to Plaintiff's supervisor at the employer stating: "[d]id you know that [John Doe] got kicked out the Yale School of Management this fall for cheating?"[2] As a direct and immediate consequence of that letter, the company terminated Plaintiff's employment.

For licensed brokers and financial advisors in the financial services industry, personal reputations are critical, particularly as they concern the person's honesty and integrity. An individual's reputational information is never guaranteed to stay within the confines of any employer organization, especially given employee turnover and migration between and among

---

[2] A true and correct copy of the anonymous letter, redacted to hide Plaintiff's identity and the identity of the employer and supervisor, is annexed hereto as Exhibit "A."

{00274547.2}   5

the largest financial services companies. Derogatory information about an employee in one financial services company will make its way into other financial services companies. As such, the potential damage to Plaintiff if Defendants are permitted to go forward with their depositions of the Former Employers is not eliminated by the fact that Plaintiff is no longer employed by either company. Furthermore, Defendants' questions during the depositions are highly likely to be sufficient for the witness to infer that there are honesty or integrity concerns about Plaintiff.

In *Bernstein v. Mafcote, Inc.*[3] the defendant in a wrongful employment termination case issued a document subpoena to the plaintiff's former employer seeking documents related to the employer's employment of the plaintiff, including the plaintiff's employment file. The plaintiff sought to quash the subpoena. Also, among the records that the defendant sought were the plaintiff's performance reviews and evaluations while working at the former employer. In defending its efforts to obtain that information from the plaintiff's former employer, the defendant argued that the information was relevant to the plaintiff's earning capacity, which was an important element of the plaintiff's lost wages claim. Setting aside the question of whether the records were in fact relevant to the plaintiff's claims, the district court nonetheless disallowed the discovery on the grounds that the defendant could obtain the information "through less intrusive discovery devices, such as plaintiff's deposition or a request for production." *Id* at *14. In the immediate case, the Defendants have in fact already obtained the information they need through other discovery devices, including document requests, and they have received from Plaintiff employment agreements, performance reviews, separation notices and agreements as well as inter-office communications, and the Forms U4 and U5, which require disclosures of basis of termination. Most pointedly, Plaintiff produced his entire state and federal tax filings for 2018,

---

[3] Case No. 3:12-cv-311 (WWE), 2014 U.S. Dist. LEXIS 98499 (D. Conn. July 21, 2014)

{00274547.2 }                                   6

2019, 2020 and 2021.

Unquestionably, Defendants' need for the additional information, if any, to be obtained by deposing the Former Employers is minimal when compared to the potential harm that Plaintiff will suffer should the depositions be permitted to go forward. Thus, balancing Defendants' interests in deposing the Former Employers against Plaintiffs' interests in protecting his career, the depositions should not be permitted.

### C. Certification Of Good Faith Efforts To Resolve Dispute Without Court Action

Pursuant to Fed. R. Civ. P. Rule 26(c)(1), the undersigned hereby certify that Plaintiff's counsel have made reasonable and good faith efforts to resolve the dispute over whether Defendants should be permitted to take depositions of the Former Employers. Specifically, on May 24, 2022, Plaintiff's attorneys, Susan Kaplan and Robert M. Fleischer, conducted a "meet and confer" telephone conference with Defendants' attorney, Patrick M. Noonan. During that telephone conference, counsel discussed Defendants' intention to proceed with depositions of the former employees and whether the instant motion could be avoided. However, despite those good faith efforts, Plaintiff's counsel were unable to resolve the dispute and unable to avoid the filing of this motion.

**WHEREFORE**, Plaintiff respectfully requests that that the Court enter an order: (1) granting this motion; (2) prohibiting Defendants from deposing Plaintiff's Former Employers; and (3) granting such other and further relief as the Court deems just and appropriate.

**[signatures on next page]**

THE PLAINTIFF,
JOHN DOE

By:   */s/ Susan Kaplan*
     Susan Kaplan (*pro hac vice*)
     The Kaplan Law Office
     30 Wall Street, 8th Floor
     New York, NY 10005
     Tel: (347) 683-2505
     Email: rfleischer@gs-lawfirm.com

- and –

By:   */s/ Robert M. Fleischer*
     Robert M. Fleischer (CT11960)
     Green & Sklarz LLC
     One Audubon St., 3rd Fl.
     New Haven, CT 06511
     Tel: (203) 285-8545
     Email: rfleischer@gs-lawfirm.com

*Attorneys for Plaintiff John Doe*